**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SHAYNNA LAUREN SIMS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **Case No. 23-CV-0417-CVE-JFJ** |
| | ) | |
| KELSEY FISHER, Warden,[1] | ) | |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Petitioner Shaynna Lauren Sims, a self-represented Oklahoma prisoner, petitions for a writ

of habeas corpus under 28 U.S.C. § 2254, claiming that she is detained in state custody in violation

of federal law under the criminal judgment entered against her in Tulsa County District Court Case

No. CF-2015-2252.  Respondent Kelsey Fisher ("respondent") opposes the petition.  On careful

consideration of the petition (Dkt. # 5),[2] response (Dkt. #8), reply (Dkt. # 10),[3] the record of state

---

[1] According to public records maintained by the Oklahoma Department of Corrections, Sims is housed at the Mabel Bassett Correctional Center in McLoud, Oklahoma, and the warden of that facility is Kelsey Fisher.  See https://oklahoma.gov/doc/facilities and https://okoffender.doc.ok.gov (both last visited June 24, 2026).  The Court therefore substitutes Kelsey Fisher, Warden, in place of Christe Sweat as party respondent.  See FED. R. CIV. P. 25(d); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts.  The Clerk of Court shall note on the record this substitution. In addition, the Clerk of Court shall update the record to show the following address for Sims:  29501 Kickapoo Road, McLoud, OK 74851.

[2] Sims filed a petition in September 2023.  Dkt. # 1.  As directed by the Court, Sims amended the petition to cure pleading deficiencies.  Dkt. ## 4, 5.  The Court declared moot the original petition, see Dkt. # 6, at 1 n.2, and therefore refers to the amended petition as the petition.

[3] Roughly one month after Sims filed the reply, she submitted a document titled "petition" that appears to be a mostly incomplete form, several handwritten notes, and copies of (a) the order directing her to show why the original petition should not be dismissed and (b) the response and all attachments thereto.  Dkt. # 12.  This was docketed as an "exhibit," but the Court has not considered it because Sims filed it after the amended petition was fully briefed and without leave to supplement the amended petition.  Sims later submitted additional handwritten notes and miscellaneous documents that were returned to her without filing.  Dkt. # 13.

court proceedings (Dkt. ## 8-1 through 8-20), and applicable law, the Court finds that Sims has not shown that federal habeas relief is warranted and concludes that the petition shall be denied.

## I. Background

In April 2017, a jury found Sims guilty of knowingly receiving/concealing stolen property (count two), first-degree burglary (count three), unauthorized dissection (count four), disturbing or interrupting a funeral (count five), and unlawful removal of a body part from deceased (count six). Dkt. # 8, at 1; Dkt. # 8-11, at 1-2.[4] The jury recommended, and the trial court imposed, prison terms of two years (count two), seven years (count three), one year (counts four and five), and five years (count six). Dkt. # 8-11, at 2. The trial court ordered all sentences to be served consecutively. Id.

Sims filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA") in October 2017, raising eight claims. Dkt. # 8-2. Relevant to this habeas proceeding, Sims claimed that the trial court did not have jurisdiction to prosecute her for the crimes charged in counts four, five, and six because she committed those crimes in Indian country and the victim, Tabatha Lynch, was Indian.[5] Id. at 3, 44-46; Dkt. # 8-5, at 2. Sims argued that the federal government had exclusive jurisdiction to prosecute her under the General Crimes Act, 18 U.S.C. § 1152 ("GCA"),

---

[4] The Court's record citations refer to the CM/ECF header pagination. Further, the Court cites all unpublished decisions herein as persuasive authority. See FED. R. APP. P. 32.1; 10th Cir. R. 32.1.

[5] "Federal law defines 'Indian country' to include, among other things, 'all land within the limits of any Indian reservation under the jurisdiction of the United States Government.'" Oklahoma v. Castro-Huerta, 597 U.S. 629, 636 (2022) (quoting 18 U.S.C. § 1151). Because the relevant statutes do not define the term "Indian," the Tenth Circuit applies a two-part test to determine if a criminal defendant is Indian for purpose of federal law. That test "ask[s] whether 'the defendant (1) has some Indian blood; and (2) is recognized as an Indian by a tribe or by the federal government." United States v. Nowlin, 555 F. App'x 820, 823 (10th Cir. 2014) (quoting United States v. Prentiss, 273 F.3d 1277, 1280 (10th Cir. 2001)).

and the Assimilative Crimes Act, 18 U.S.C. § 13 ("ACA").[6]  Dkt. # 8-2, at 44.  To support her

position that she committed the crimes in Indian country, Sims relied on the then recent decision

in Murphy v. Royal, 866 F.3d 1164 (10th Cir. 2017), amended and superseded on denial of reh'g

by 875 F.3d 896 (10th Cir. Nov. 9, 2017) ("Murphy I"), aff'd sub nom. Sharp v. Murphy, 591 U.S.

977 (2020) ("Murphy II").  Id. at 45.  In Murphy I, the United States Court of Appeals for the

Tenth Circuit ("Tenth Circuit") held that the Muscogee (Creek) Nation Reservation in Oklahoma

is "Indian country" for purposes of the Major Crimes Act, 18 U.S.C. § 1153 ("MCA").[7]  Murphy

I, 875 F.3d at 966.  The respondent in that Murphy I petitioned for a writ of certiorari, and the

United States Supreme Court ("Supreme Court") granted that petition in May 2018.  Royal v.

Murphy, 584 U.S. 992 (May 21, 2018).  In March 2019, the OCCA abated Sims's direct appeal

because "the litigation in Murphy [was] ongoing and not final."  Dkt. # 8-4, at 2.

In July 2020, the Supreme Court issued decisions in McGirt v. Oklahoma, 591 U.S. 894

(2020), and Murphy II.  Like the Tenth Circuit in Murphy I, the Supreme Court in McGirt held

that the Muscogee (Creek) Nation Reservation in Oklahoma is "Indian country," as defined in 18

---

[6] The GCA "grants the Federal Government jurisdiction to prosecute crimes in Indian country." Castro-Huerta, 597 U.S. at 638.  It does not, however, "extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively."  18 U.S.C. § 1152.  The ACA's "basic purpose is one of borrowing state law to fill gaps in the federal criminal law that applies on federal enclaves."  Lewis v. United States, 523 U.S. 155, 160 (1998).  Relevant here, "the ACA applies to acts committed on an Indian reservation that are crimes in the state within which the reservation is located—here, Oklahoma— but are not otherwise crimes under federal law."  United States v. Polk, 61 F.4th 1277, 1278 (10th Cir. 2023).

[7] The MCA provides, in part, that "[a]ny Indian who commits against the person or property of another Indian or other person" certain enumerated offenses "within the Indian country, shall be subject to the same law and penalties as all other persons committing any of [those] offenses, within the exclusive jurisdiction of the United States."  18 U.S.C. § 1153(a).

U.S.C. § 1151(a), and, as a result, the federal government has exclusive jurisdiction, under the MCA, to prosecute certain crimes committed by Indians within the boundaries of that reservation. McGirt, 591 U.S. at 897-98, 913, 932-34.  Relying on its decision in McGirt, the Supreme Court summarily affirmed the Tenth Circuit's decision in Murphy I.  See Murphy II, 591 U.S. at 977.

The OCCA subsequently remanded Sims's case to the state district court for an evidentiary hearing on her jurisdiction claim.  Dkt. # 8-5.  Applying McGirt and Prentiss to stipulated facts, the state district court found that Lynch was Indian and that Sims committed the crimes in Indian country.  Dkt. # 8-8.  The state filed a supplemental post-remand brief in the OCCA, asserting that it has exclusive jurisdiction over victimless crimes committed by non-Indians in Indian country and that Sims committed victimless crimes because Lynch was deceased when Sims committed the crimes against Lynch. Dkt. # 8-9.  Alternatively, the state asserted that it has concurrent jurisdiction to prosecute crimes committed by non-Indians in Indian country.  Id.  In October 2021, the OCCA rejected both arguments and determined "that pursuant to McGirt, the State of Oklahoma did not have jurisdiction to prosecute [Sims] in this matter."  Dkt. # 8-11, at 6-9.  The OCCA reversed the judgments and sentences entered against Sims and remanded the case to the state district court with instructions to dismiss.  Id. at 9-10.  After the OCCA issued its mandate, the state district court vacated Sims's judgments and sentences and dismissed Sims's case.  Dkt. ## 8-12, 8-13; Dkt. # 8-19, at 31.  Sims was released from state custody in November 2021.  Dkt. # 5, at 6.

The state timely petitioned for a writ of certiorari in the Supreme Court in February 2022. Dkt. # 8-14; Dkt. # 8-20, at 6.  Four months later, the Supreme Court issued a decision in Oklahoma v. Castro-Huerta, 597 U.S. 629 (2022).  There, the Supreme Court "concluded that the [GCA] does not preempt state jurisdiction over crimes committed by non-Indians in Indian country" and "that

the Federal Government and the State have concurrent jurisdiction to prosecute crimes committed by non-Indians against Indians in Indian country." Castro-Huerta, 597 U.S. at 647, 656. The Supreme Court subsequently granted the state's petition for writ of certiorari, reversed the OCCA's decision granting Sims appellate relief, and remanded the case to the OCCA for further consideration in light of Castro-Huerta. Dkt. # 8-15.

In February 2023, the OCCA issued a new decision rejecting Sims's jurisdiction claim in light of Castro-Huerta, denying relief as to her remaining appellate claims, and affirming her judgments and sentences. Dkt. # 8-16. The state immediately applied for an arrest warrant and a court order remanding Sims to state custody. Dkt. # 8-17. Pursuant to a bench warrant issued by the state district court, Sims was arrested on February 28, 2023. Dkt. # 8-19, at 32. Following a hearing in March 2023, the state district court reinstated Sims's judgments and sentences and remanded her to custody of the Oklahoma Department of Corrections. Id. at 32-33.

Sims did not challenge the March 2023 reinstatement of her judgments and sentences through any further state court proceedings.[8] Id. She commenced this federal habeas proceeding in September 2023. Dkt. # 1.

## II. Discussion

### A. Legal standards

Federal courts have equitable discretion to grant habeas relief to a state prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2254(a). But the habeas statutes, as amended by the Antiterrorism and Effective Death

---

[8] Sims alleges in her reply that she applied for postconviction relief in state district court on September 28, 2023. Dkt. # 10, at 2. She did not submit a copy of the application or any state court decisions regarding a postconviction application. Id. And the state court docket sheet submitted by respondent shows no application for postconviction relief was filed by Sims in September 2023. Dkt. # 8-19 at 33.

Penalty Act of 1996 ("AEDPA"), and Supreme Court decisions limit that discretion.  Two limits are relevant here.

First, before a state prisoner seeks federal habeas relief from custody that allegedly violates federal law, the prisoner ordinarily must exhaust available state remedies by fairly presenting her federal claims in state court.  28 U.S.C. § 2254(b)(1)(A); see O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999) (concluding "that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the [s]tate's established appellate review process").  To satisfy the exhaustion requirement, a state prisoner must present the federal claim to the state's highest court through a direct appeal or a post-conviction proceeding.  Dever v. Kan. State Penitentiary, 36 F.3d 1531, 1534 (10th Cir. 1994).  If a state prisoner does not exhaust available state remedies as to the federal claim, a federal court has several options, but granting federal habeas relief is not one of them.  See Ellis v. Raemisch, 872 F.3d 1064, 1076 (10th Cir. 2017) ("AEDPA prohibits federal courts from granting habeas relief to state prisoners who have not exhausted available state remedies"); Wood v. McCollum, 833 F.3d 1272, 1273 (10th Cir. 2016) (explaining that "[a] district court confronted with a mixed petition," i.e., a petition that asserts both exhausted and unexhausted claims, may (1) dismiss the entire petition without prejudice, (2) deny the entire petition on the merits, (3) "permit the petitioner to delete the unexhausted claim from his petition and proceed only on the exhausted claims," or (4) "stay the federal habeas petition and hold it in abeyance while the petitioner returns to state court to exhaust the previously unexhausted claims"); see also Whitton v. Dixon, 608 U.S. ___, 146 S. Ct. 1368, 1373 (June 1, 2026) (Thomas, J., dissenting) ("In federal habeas proceedings, when a prisoner raises an unexhausted claim, the court cannot enter relief for the prisoner, but it can rule on the merits against the prisoner without addressing exhaustion." (citing 28 U.S.C. § 2254(b)(2))).

6

Second, when a state prisoner has properly exhausted a federal claim in state court and the state court has denied relief after adjudicating that claim on the merits, a federal court shall not grant federal habeas relief unless the prisoner satisfies certain preconditions. Specifically, the prisoner must show that the state court's adjudication of the federal claim resulted in a decision that either is "contrary to, or based on an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1),[9] or is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," id. § 2254(d)(2). "For claims adjudicated on the merits, therefore, AEDPA imposes a highly deferential standard for evaluating state-court rulings—one that demands that state-court decisions be given the benefit of the doubt, and that prohibits [federal courts] from substituting [their] own judgment for that of the state court." Ellis, 872 F.3d at 1083 (cleaned up) (alterations added). This is a "difficult to meet" standard that requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 102-03 (2011).

With these standards in mind, the Court turns to Sims's claims.

**B. Analysis**

Despite exercising her opportunity to amend her petition, Sims's claims remain unclear. The first few pages of the petition appear to recount the procedural history related to Sims's attempts to obtain relief in state court on the jurisdiction claim. Dkt. # 5, at 1-5. In describing her

---

[9] For purposes of § 2254(d)(1), "clearly established Federal law" means Supreme Court holdings. Andrew v. White, 604 U.S. 86, 92, 94 (2025). And "[w]hen [the Supreme] Court relies on a legal rule or principle to decide a case, that principle is a 'holding' of the [Supreme] Court for purposes of AEDPA." Id.

first ground for federal habeas relief, Sims states: "I got denied the state criminal appeals from state after I was released from state custody in Nov 2021 & granted <u>McGirt</u> all charges & fees dropped." <u>Id.</u> at 6 (grammar and syntax in original). In the portion of the petition that asks Sims to describe her attempts to exhaust available state remedies as to this ground, Sims states that she "filed state appeals & <u>McGirt</u> grant release from state prison & supreme court changed law a put back in custody." <u>Id.</u> at 7 (grammar and syntax in original). In the sections asking Sims to identify her second and third grounds for federal habeas relief, Sims appears to quote passages from the OCCA's original decision on direct appeal. <u>Compare</u> Dkt. # 5 at 7-10, <u>with</u> Dkt. # 8-11, at 1, n.1, 8-10 & nn. 4-5, 13. In response to a question about whether "any ground in this petition has not been presented in some state or federal court," Sims states: "immediately release & vacate of rest of the full sentences & discharge from state custody on post-conviction/double jeopardy relief." <u>Id.</u> at 12 (grammar, spelling, and syntax in original). Finally, in the section of the petition that asks Sims to describe the relief she seeks from this Court, Sims states:

> Court of Criminal Appeals may not not consider that merits of or grant relief based the subsequent of untimely original application. That contains sufficient specific facts establishing that the current claims & issues have not been & could not been presented. Application filed under this section because the factual legal basis for the claim was unavailable/ Appeals / Application – Introduction Application Grounds for Relief Application Ineffective Assistance of Counsel/ Request for Discovery & Evidentiary Hearing/ App. Procedures motion/ limitations finality of convictions time for filing certiorari petition limit to [unintelligible] claims.

<u>Id.</u> at 15 (grammar, syntax, and nonconventional capitalization in original).[10] In her reply, Sims appears to reassert her jurisdiction claim and, for the first time, asserts that she is in custody "in

---

[10] To the extent any portion of this paragraph or any other portion of the petition could be construed as requesting discovery or an evidentiary hearing in this federal habeas proceeding, the Court finds that neither discovery nor an evidentiary hearing is necessary to adjudicate the petition and therefore denies both requests.

violation of her Fourteenth Amendment right to due process." Dkt. # 10, at 2 (citing Graham v. White, 2023 WL 4141662).

Respondent states that Sims's petition "is difficult to decipher." Dkt. # 8 at 5. The Court agrees. And, while courts must liberally construe pleadings filed by self-represented litigants, courts may not "rewrite a petition to include claims that were never presented." Childers v. Crow, 1 F.4th 792, 798 (10th Cir. 2021) (quoting Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999)). Navigating the narrow space between liberal construction and advocacy, the Court discerns from the petition two potential claims, neither of which warrants federal habeas relief.[11]

### 1. Double jeopardy claim

First, as respondent suggests, Sims might be asserting a double jeopardy claim alleging that "reinstatement of [her] judgment after the [s]tate successfully appealed its vacatur by the OCCA violated her right to be free from double jeopardy." Dkt. 8 at 11; see Dkt. # 5, at 6-7. If this is Sims's claim, the Court agrees with respondent that this claim is unexhausted but should be denied on the merits under § 2254(b)(2). Dkt. # 8, at 11-12; see Hoxsie v. Kerby, 108 F.3d 1239, 1242-43 (10th Cir. 1997) (noting that courts should deny unexhausted but plainly meritless claims when requiring the petitioner to return to state court to exhaust the claim would "simply require useless litigation in the state courts").

As respondent contends, "it is well settled that an appellate court's order reversing a conviction is subject to further review even when the appellate court has ordered the indictment dismissed and the defendant discharged." Dkt. # 8, at 11 (quoting United States v. Wilson, 420

---

[11] Sims's assertion of an undeveloped Fourteenth Amendment due process claim in her reply brief comes too late for this Court to consider it. See Thompkins v. McKune, 433 F. App'x 652, 660 (10th Cir. 2011) (noting that "arguments raised for the first time in a [reply] are not properly presented to the district court"). The Court therefore does not address the belated Fourteenth Amendment claim.

U.S. 332, 345 (1975)).  And, "[w]hen a jury returns a verdict of guilty and a trial judge (*or an appellate court*) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty."  Smith v. Massachusetts, 543 U.S. 462, 467 (2005) (emphasis added).

Here, Sims sought review of her convictions and sentences by filing a direct appeal in the OCCA and she obtained relief on her claim that the state lacked jurisdiction to prosecute her.  The OCCA reversed her judgments and sentences and ordered the state court to vacate them and dismiss the criminal case against Sims.  But the state petitioned for a writ of certiorari in the Supreme Court to challenge the OCCA's decision that granted relief to Sims.  See 28 U.S.C. § 1257(a) (providing, in relevant part, that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question").  While the state's petition was pending, the decided Castro-Huerta, issuing a holding that supported the state's position that it had jurisdiction to prosecute Sims.  Like Sims's case, Castro-Huerta involved the state's exercise of criminal jurisdiction over a non-Indian defendant who committed a crime against an Indian in Indian country.  597 U.S. at 632.  The Supreme Court held in Castro-Huerta that the state and the Federal government have concurrent jurisdiction to prosecute a non-Indian defendant who commits a crime against an Indian in Indian country.  Id. at 633, 656.  Based on its holding in Castro-Huerta, the Supreme Court granted the state's petition for writ of certiorari, reversed the OCCA's decision that granted relief to Sims, and remanded the case to the OCCA to reconsider Sims's jurisdiction claim in light of Castro-Huerta.  As required by the Supreme Court's reversal of the OCCA's original decision, the OCCA withdrew its original decision and reinstated Sims's direct appeal to reconsider the jurisdiction claim.  Bound by Castro-Huerta's holding, the

OCCA concluded that the state had jurisdiction to prosecute Sims and thus rejected Sims's jurisdiction claim. The OCCA then considered and denied relief as to Sims's other appellate claims (i.e., those claims that Sims raised on direct appeal that the OCCA did not address in its original decision) and affirmed her convictions and sentences. Consistent with the OCCA's mandate that issued following its decision affirming Sims's convictions and sentences, the state district court reinstated Sims's previously vacated judgments and sentences. Under these facts, the double jeopardy clause was not implicated, much less violated, because the Supreme Court's reversal of the OCCA's original decision required the OCCA to reconsider a purely legal question and the ultimate result of the OCCA's reconsideration of that question was the reinstatement of Sims's original judgments and sentences that were based on the jury's guilty verdicts, not a new trial. See Smith, 543 U.S. at 467 ("[T]he Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty."); United States v. Roark, 140 F.4th 1280, 1286 (10th Cir. 2025) (noting that a court's "reconsideration on a purely legal issue doesn't violate the Double Jeopardy Clause").

To the extent Sims's petition can be construed as asserting a double jeopardy claim, the Court denies the petition as to that claim because that claim is unexhausted and plainly meritless. See 28 U.S.C. § 2254(b)(2); Whitton, 146 S. Ct. at 1373; Hoxsie, 108 F.3d at 1242-43.

### 2. Jurisdiction claim

Second, like respondent, the Court finds it reasonable to read the petition as reasserting the jurisdiction claim that Sims presented to the OCCA, and thus exhausted, through her direct appeal. Dkt. # 8, at 12-14; see Dkt. # 5, generally, and Dkt. # 10, at 2. However, as respondent contends,

§ 2254(d)(2) bars relief as to this claim because the OCCA's ultimate rejection of this claim flows directly from the holding in Castro-Huerta.  Dkt. # 8, at 12-14.

As just discussed, the Castro-Huerta Court held that the state and the federal government have concurrent jurisdiction to prosecute crimes a non-Indian defendant commits against an Indian in Indian country.  597 U.S. at 633, 656.  The OCCA's adjudication of Sims's jurisdiction claim—when the stipulated facts presented in state court showed that Sims, a non-Indian, committed crimes against Lynch, an Indian, in Indian country—is not contrary to the Supreme Court's holding in Castro-Huerta, is not based on an unreasonable application of that holding to the facts of Sims's case, and is not based on an unreasonable determination of the facts based on the evidence that was presented in state court.  Thus, § 2254(d) unquestionably bars relief.  See Richter, 562 U.S. at 102-03.

To the extent Sims's petition can be construed as reasserting the jurisdiction claim that she presented to the OCCA through her direct appeal, the Court denies the petition as to that claim because § 2254(d) bars relief.

### III.  Conclusion

Based on the foregoing analysis, the Court concludes that the petition shall be denied because Sims has not shown that she is in custody in violation of federal law.  Further, the Court finds that reasonable jurists would not debate this Court's assessment of Sims's claims and thus concludes that no certificate of appealability shall be issued as to any claims raised in the petition. See 28 U.S.C. § 2253; Slack v. McDaniel, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that:

1.  the Clerk of Court shall **note** on the record the substitution of Kelsey Fisher, Warden, in place of Christe Sweat as party respondent;

2. the Clerk of Court shall **update** the record to show the following address for petitioner Shaynna Lauren Sims:  29501 Kickapoo Road, McLoud, OK 74851.

3. Sims's requests for discovery and an evidentiary hearing, as asserted in the petition (Dkt. # 5, at 15) are **denied**;

4. the petition (Dkt. # 5) is **denied**;

5. a certificate of appealability is **denied**; and

6. a separate judgment shall be entered in this matter.

**DATED** this 29th day of June, 2026.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE